1

**NORTON ROSE FULBRIGHT US LLP**
JEFFREY B. MARGULIES (BAR NO. 126002)

2

EVA YANG (BAR NO. 306215)
555 South Flower Street

3

Forty-First Floor
Los Angeles, California  90071

4

Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494

5

jeff.margulies@nortonrosefulbright.com
eva.yang@nortonrosefulbright.com

6

Attorneys for Defendant

7

ASHLEY GLOBAL RETAIL, LLC

8

9

**UNITED STATES DISTRICT COURT**

10

**CENTRAL DISTRICT OF CALIFORNIA**

11

12

GABRIELLA HERNANDEZ,
individually and on behalf of all others

13

similarly situated,

14

　　　　　Plaintiff,

15

　　v.

16

ASHLEY GLOBAL RETAIL, LLC, a
Delaware Limited Liability Company,

17

18

　　　　　Defendant.

19

20

21

22

23

24

25

26

27

28

Case No. 2:23-cv-05066-FMO-PD

Assigned to Honorable Fernando M. Olguin

**DEFENDANT ASHLEY GLOBAL RETAIL, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT**

Date:　　　September 7, 2023
Time:　　　10:00 am
Courtroom:  6D

136760640.3

**TO THE HONORABLE COURT, PLAINTIFF, AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on September 7, 2023 at 10:00 am in Courtroom  6D of the United States District Court for the Central District of California, located at 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, defendant Ashley Global Retail, LLC ("Ashley") will, and hereby does, move for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice the First Amended Class Action Complaint for Violation of the Video Protection Privacy Act ("FAC") brought by plaintiff Gabriella Hernandez.

This motion is made on the following grounds:

1.     Ashley is not a "video tape service provider" under the Video Privacy Protection Act ("VPPA") because it is not engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials;

2.     Plaintiff is not a "consumer" under VPPA because she did not purchase, rent, or subscribe to any videos from Ashley; and

3.     Ashley did not disclose any of plaintiff's personally identifiable information.

This motion is based upon this notice, the accompanying memorandum of points and authorities, the request for judicial notice; all files, records, and proceedings in this case; and any oral argument the Court may entertain.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 26, 2023.

DOCUMENT PREPARED
ON RECYCLED PAPER

1  Dated: August 4, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NORTON ROSE FULBRIGHT US LLP**
JEFFREY B. MARGULIES
EVA YANG

By _____
EVA YANG
Attorneys for Defendant
ASHLEY GLOBAL RETAIL, LLC

# **<u>TABLE OF CONTENTS</u>**

**Page(s)**

I.      INTRODUCTION. .................................................................................................... 7

II.     RELEVANT FACTUAL ALLEGATIONS. ........................................................... 8

III.    LEGAL STANDARD. ............................................................................................ 9

IV.     PLAINTIFF FAIL TO STATE A CLAIM FOR VIOLATION OF THE VPPA. .............. 10

    A.     Ashley Is Not A Video Tape Service Provider. ........................................... 10

    B.     Plaintiff Is Not A Consumer Under The Vppa. ........................................... 13

    C.     Ashley Did Not Disclose Plaintiff's PII. ..................................................... 15

V.      PLAINTIFF'S FAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND. ...... 16

VI.     CONCLUSION. ...................................................................................................... 16

DOCUMENT PREPARED
ON RECYCLED PAPER

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................... 10, 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................................. 10

*Cappello v. Walmart Inc.,*
  2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ................................................ 14, 15

*Carroll v. Gen. Mills, Inc.,*
  2023 WL 4361093 (C.D. Cal. Jun. 26, 2023) ................................................. 12, 13

*Carter v. Scripps Networks, LLC,*
  __ F. Supp. 3d ___, 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023) ................. 13, 14

*Eichenberger v. ESPN, Inc.,*
  876 F.3d 979 (9th Cir. 2017)................................................................................. 16

*Ellis v. Cartoon Network, Inc.,*
  803 F.3d 1251 (11th Cir. 2015).............................................................................. 14

*Funke v. Sorin Group USA, Inc.,*
  147 F. Supp. 3d 1017 (C.D. Cal. Nov. 24, 2015) .................................................. 10

*In re Hulu Privacy Litig.,*
  2012 WL 3282960 (N.D. Cal. Aug. 10, 2012)........................................................ 13

*Hunthausen v. Spine Media, LLC,*
  __ F. Supp. 3d ___, 2023 WL 4307163 (S.D. Cal., June 21, 2023) ...................... 14

*Leadsinger, Inc. v. BMG Music Publ'g,*
  512 F.3d 522 (9th Cir. 2008)................................................................................. 16

*Mollett v. Netflix, Inc.,*
  795 F.3d 1062 (9th Cir. 2015)............................................................................... 10

*In re Nickelodeon Consumer Privacy Litig.,*
  827 F.3d 262 (3d Cir. 2016).................................................................................. 16

*In re Vizio, Inc.,*
  238 F. Supp. 3d 1204 (C.D. Cal. Mar. 2, 2017)..................................................... 11

**Rules and Statutes**

18 U.S.C. § 2710(a)(1)........................................................................................... 13

18 U.S.C. § 2710(a)(3)........................................................................................... 15

18 U.S.C. § 2710(a)(4)........................................................................................... 11

DOCUMENT PREPARED
ON RECYCLED PAPER

18 U.S.C. §§ 2710(b)(1) .................................................................................. 10, 13, 14

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 10

Video Privacy Protection Act, 18 U.S.C. § 2710 .......................... 7, 8, 9, 10, 11, 12, 13, 14, 15, 16

**Other Authorities**

Senate Report 100-599 .................................................................................................. 14

Document Prepared
on Recycled Paper

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION.

When publication of 146 films that Judge Robert Bork rented from a video store prompted the swift denouncement of "big brother" and enactment of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), hardly anyone could imagine just how far claimants would seek to expand the bounds of the VPPA. In this lawsuit, plaintiff asserts a claim under the VPPA against Ashley Global Retail, LLC ("Ashley"), a company that sells furniture, because plaintiff, a self-proclaimed "tester," happened to watch a free demonstrative video about closet organizers on Ashley's website. Plaintiff did not pay for the video, nor did she subscribe to any service or website to access it. Plaintiff did not even have to click "play" to see the video, which automatically starts upon visiting a particular page within Ashley's website. If Plaintiff is allowed to proceed on these facts, any company that displays free videos on their website is at risk. The law was simply not designed for these circumstances.

Despite already amending the complaint once, plaintiff's First Amended Class Action Complaint for Violation of the Video Protection Privacy Act ("FAC") still fails to plausibly allege any cognizable theory of liability under the VPPA against Ashley. The VPPA prohibits the disclosure of personally identifiable information of consumers who rent, purchase, or subscribe to videos from a video tape service provider. Plaintiff's claim fall short at every turn.

First, as plaintiff admits, Ashley is a company that sells furniture. Despite allegations that Ashley is peripherally involved in distributing free videos for advertising and promotional purposes, the VPPA's definition of a video tape service provider is limited to only those who actually engaged in the business of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. Courts have interpreted this to mean "a particular field of endeavor" of the defendant's work. Plaintiff fails to allege, because she can't, that Ashley's particular

field of endeavor is selling, delivering, or renting audio visual materials. Ashley is a far cry from Netflix or the now extinct Blockbuster video, but Plaintiff would have this Court believe that they are effectively in the same business.

Second, even if Ashely was a video tape service provider, Plaintiff does not qualify as a "consumer" under the VPPA. To be a consumer, plaintiff must have rented, subscribed, or purchased the video that she watched on Ashley's website. Plaintiff's allegation that she purchased certain unidentified products in the past from Ashley is wholly irrelevant to the inquiry. Both the plain language of VPPA and its legislative history makes clear that the scope of VPPA liability does not extend to consumers of products other than videos.

Finally, plaintiff fails to allege that her personally identifiable information was disclosed. The Ninth Circuit has adopted the "ordinary person" standard such that and only information that can readily permit an ordinary person to identify a particular individual as having watched certain videos can constitute personally identifiable information. Plaintiff allegations of static digital identifiers—IP address and the device make, model, operating system, and browser information—would not enable an ordinary person to identify any specific individual.

For these and other reasons discussed more fully below, Ashley respectfully requests that the Court dismiss plaintiff's FAC without leave to amend, as plaintiff already amended her complaint once and any further amendment would be futile.

## II.   RELEVANT FACTUAL ALLEGATIONS.

Plaintiff is a purported "tester" who "works to ensure that companies abide by the privacy obligations imposed by federal law." FAC ¶ 24. At some undetermined time in the past, plaintiff purchased unidentified "products" from Ashley. *Id.*, ¶ 23. Plaintiff alleges that Ashley is a "high end furniture company" that owns, operates, and or controls a website that has "numerous pre-recorded videos" which promote various home furniture products. *Id.*, ¶¶ 5, 28-41. In addition, plaintiff alleges that Ashley has a job posting for two marketing managers for the management of video

production for purposes of advertising and marketing, social media pages with "reels," which are videos, a YouTube channel, and increased its sales through conversions on its website and social media advertisements. *Id.* ¶¶ 42-45. Plaintiff claims in a conclusory allegation that Ashley hosts video content so it can later "retarget" its customers with advertisements. *Id.* ¶ 54.

In the spring of 2023, plaintiff allegedly watched a video titled "Closet Systems" on Ashley's website, which purportedly triggered submission of her user data to TikTok, a social media platform, through the use of the TikTok pixel tool. *Id.*, ¶¶ 4, 20. The data that was sent to TikTok is the "Page View" event, along with the title of the video, which is embedded into the "Page View." *Id.*, ¶ 21. The TikTok pixel allegedly also tracks and reports to TikTok additional metadata, such as "Ad/Event (information about the ad a TikTok user has clicked), Timestamp (the time that the page was viewed), the user's IP Address, and the user's device make, model, operating system, and browser information." *Id.*, ¶ 15.

Based on the above, plaintiff asserts one claim against Ashley for violation of the VPPA. *Id.*, ¶ 20. Plaintiff also seeks to bring this action on behalf of all persons in the United States who played video content on Ashley's website and whose personally identifiable information was disclosed. *Id.*, ¶ 25.

## III.  <u>LEGAL STANDARD.</u>

Federal Rule of Civil Procedure 12(b)(6) requires the Court to dismiss a complaint that fails to state a claim upon which relief can be granted. Although a complaint does not need to include detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Indeed, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Court need

not accept conclusory allegations, unreasonable inferences, or legal conclusions set out in the form of factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In addition to factual shortcomings, "a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, or where the allegations on their face show that relief is barred as a matter of law." *Funke v. Sorin Group USA, Inc.*, 147 F. Supp. 3d 1017, 1022 (C.D. Cal. Nov. 24, 2015) (quotations and citations omitted). In the end, the "court's plausibility analysis is a 'context-specific task,' and it calls on the court to rely on its experience and to exercise common sense." *Id.* (citing *Iqbal*, 556 U.S. at 678).

## IV.  PLAINTIFF FAIL TO STATE A CLAIM FOR VIOLATION OF THE VPPA.

The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" concerning any "consumer." *See* 18 U.S.C. §§ 2710(b)(1). As such, in order to plead a plausible claim under VPPA, a plaintiff must allege that (1) the defendant is a "video tape service provider"; (2) the defendant disclosed personally identifiable information; and (3) the information disclosed concerned a "consumer" as defined in section 2710(a). *Id.*; *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). As further discussed below, plaintiff's VPPA claim fails because she cannot plausibly allege any of the three requirements.

### A.  Ashley is not a video tape service provider.

First, Ashley is not a video tape service provider under the VPPA. A "video tape service provider" means "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials…." 18 U.S.C. § 2710(a)(4). "When used in this context, 'business' connotes 'a particular field of endeavor,' i.e., a focus of the defendant's work." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. Mar. 2, 2017). "[F]or the defendant to be engaged in the business of delivery video

content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *Id.*

Plaintiff alleges that Ashley "is a high end furniture company that owns, operates, and/or controls the Website and offers videos to watch through the website." FAC ¶ 5. Plaintiff further claims that Ashley has a website that hosts other presumably free promotional videos regarding various products, a job posting for two marketing managers, social media pages with videos, a YouTube channel, and generated conversions through its website and social media advertisements. *Id.* ¶¶ 29-45.

Aside from this, there are a few other conclusory allegations relating to videos: "Defendant is a 'video tape service provider' that monetizes video content that it creates, hosts, and delivers videos on the Website" (*id.,* ¶ 52); and "[h]osting video content is a key part of Defendant's business model, as it uses the videos as a 'trojan horse' to collect and disclose viewers' [personally identifiable information] so it can later retarget them for advertisements" (*id.,* ¶ 54). These conclusory allegations are insufficient to establish Ashley as a video tape service provider, because there are no facts alleged to support them. *See Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009) (a court need not accept conclusory allegations, unreasonable inferences, or legal conclusions set out in the form of factual allegations).

Even viewing these allegations in the light most favorable to plaintiff, the most that they amount to is that Ashley is a furniture company that advertises and promotes its products through videos on its website. By plaintiff's own allegations, providing video content is not the focus of Ashley's business as a "high end furniture company." FAC ¶¶ 5, 56. Indeed, despite the various allegations regarding videos on Ashley's website, plaintiff admits that such videos are "promoting a product." Plaintiff does not, and cannot, plausibly allege that Ashley's business is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery

DOCUMENT PREPARED ON RECYCLED PAPER

1  of prerecorded video cassette tapes or similar audio visual materials." Because the

2  allegations of the FAC demonstrate that Ashley's delivery of video content is merely

3  peripheral to its sale of furniture, plaintiff's allegation that Ashley is a "video tape

4  service provider" as defined by the VPPA is without merit.

5      The allegations here are remarkably similar to a complaint that was recently

6  dismissed by Judge Fischer in this district last month for failing to allege that General

7  Mills was a video tape service provider under the VPPA. Plaintiff alleged that

8  General Mills was a video tape service provider because it increased its brand

9  presence via the use of videos and used the videos to collect and disclose viewer's

10 personally identifiable information so it could later retarget them for advertisements.

11 *Carroll v. Gen. Mills, Inc*., 2023 WL 4361093, *3 (C.D. Cal. Jun. 26, 2023). The

12 court held: "Even by Plaintiffs' characterization, the websites are maintained for the

13 brands; they are not the key component of the brands. The videos on the website are

14 part of Defendant's brand awareness, but they are not Defendant's particular field of

15 endeavor. Nothing suggests that Defendant's business is centered, tailored, or focused

16 around providing and delivering audiovisual content." *Id.*

17     This is in contrast to cases with complaints that adequately alleged that the

18 defendants were video tape service providers. For example, *In re Vizio, Inc*., *supra,*

19 238 F. Supp. 3d at 1222 held that allegations that Vizio provided apps designed to

20 enable consumers to seamlessly access Netflix, Hulu, YouTube, and Amazon Instant

21 Video content in their home established that Vizio was a video tape service provider.

22 The court noted that the statutory definition of "video tape service provider" excludes

23 businesses that sell products or services that "are far too peripherally or passively

24 involved in the delivery of video content" from "the business" of delivering video

25 content. *Id*; *see also In re Hulu Privacy Litig.*, 2012 WL 3282960, at *6 (N.D. Cal.

26 Aug. 10, 2012) (Hulu deemed a video tape service provider by operating a website

27 that provides programming such as news, entertainment, education, and general

28 interest programs).

1    But this is exactly the result of plaintiff's attempt to impose liability on Ashley.

2    As a furniture company that merely offers free videos on its website for promotional

3    purposes, Ashley is not a "video tape service provider" under the VPPA. Such an

4    interpretation would render any limitation to the definition meaningless, as any

5    business—including a restaurant, a clothing store, a car repair shop, or even a law

6    firm—would easily qualify as a video tape service provider given the ubiquity of

7    hosting video content on websites for promotional or informational purposes.

8    **B.    <u>Plaintiff is not a consumer under the VPPA.</u>**

9    The VPPA makes it unlawful for a video tape service provider to disclose

10   personally identifiable information of any "consumer of such provider," 18 U.S.C. §

11   2710(b)(1), but plaintiff is not a "consumer" who is entitled to bring a claim under

12   the VPPA. A "consumer" is defined as "any renter, purchaser, or subscriber of goods

13   or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). In reading

14   the VPPA in context, "a reasonable reader would understand the definition of

15   'consumer' to apply to a renter, purchaser or subscriber of audio-visual goods or

16   services, and *not goods or services writ large.*" *Carter v. Scripps Networks, LLC*, __

17   F. Supp. 3d ___, 2023 WL 3061858, at *6 (S.D.N.Y. Apr. 24, 2023) (emphasis

18   added). Section 2710(b)(1) provides for an action by a renter, purchaser of subscriber

19   of audio visual materials, and not a broader category of consumers. As such, "the

20   scope of a 'consumer,' when read with sections 2710(b)(1) and (a)(4), is cabined by

21   the definition of 'video tape service provider,' with its focus on the rental, sale or

22   delivery of audio-visual materials." *Id.*, *see also, Hunthausen v. Spine Media, LLC*,

23   __ F. Supp. 3d ___, 2023 WL 4307163, at *3 (S.D. Cal., June 21, 2023) quoting

24   *Carter, supra*, 2023 WL 3061858, at *6; *see also, Cappello v. Walmart Inc.*, 2019

25   WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) ("the plain language of the VPPA"

26   requires "video tape service providers to . . . request consumers' consent to a privacy

27   disclosure that addresses only the use of personally identifiable information

28   connected with video purchases.").

This limitation on the scope of "consumers" subject to the protection of the act is further confirmed by the legislative history. As set forth in Senate Report 100-599, the VPPA was enacted to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials. The Senate Report provides that the definition of personally identifiable information includes the term "video" to make clear that "simply because a business is engaged in the sale or rental of video materials or services does mean that all of its products or services are within the scope of the bill." Request for Judicial Notice ("RFJN"), Exh. A at 12. For example, "a department store that sells video tapes would be required to extend privacy protection to *only* those transactions involving the purpose of video tapes and *not other products*." *Id.* (emphasis added). Construing the term "consumer" to mean a person who rents, purchases, or subscribes to *any* goods or services is inconsistent with congressional intent, which was to protect personally identifiable information associated with a consumer who rents, purchases, or views audio visual materials.

Moreover, plaintiff does not plausibly allege that she is a "subscriber" of the video she viewed on the Ashley website. "'[S]ubscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015). "Congress could have employed broader terms in defining 'consumer' when it enacted the VPPA (e.g., 'user' or 'viewer') or when it later amended the Act (e.g., 'a visitor of a web site or mobile app'), but it did not.' *Id.* at 1256–57.

Plaintiff alleges that she is a "consumer" because she has "purchased products from Defendants in the past." FAC ¶ 20. Fatal to plaintiff's VPPA claim is that she fails to allege that she purchased, rented, or subscribed to any of Ashley's *videos*. In fact, plaintiff does not even identify what product she purchased, when she purchased it, or allege whether she rented, subscribed, or paid for the "Closet Systems" video she watched on Ashley's website. Unlike the plaintiff in *Cappello*, who alleged a purchase of "video media from walmart.com," 2019 WL 11687705 at *1-2,

plaintiff's bare allegation that she is a "consumer" is insufficient to satisfy the "consumer" requirement under the VPPA.

### C. Ashley did not disclose plaintiff's personally identifiable information.

Finally, plaintiff's VPPA claim fails because it fails to allege that Ashley disclosed any of plaintiff's personally identifiable information. The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Plaintiff alleges that the TikTok pixel tracks and reports to TikTok the following information: "Ad/Event (information about the ad a TikTok user has clicked), Timestamp (the time that the page was viewed), the user's IP Address, and the user's device make, model, operating system, and browser information." FAC, ¶ 15. This allegation fails to establish an improper disclosure of personally identifiable information.

The Ninth Circuit has defined personally identifiable information as information that "'readily permit[s] *an ordinary person* to identify a [particular individual as having watched certain videos]'" as it adopted the Third Circuit's "ordinary person" standard as set forth in *In re Nickelodeon Consumer Privacy Litig*. *See Eichenberger v. ESPN, Inc*., 876 F.3d 979, 985 (9th Cir. 2017) (emphasis in original) (*quoting In re Nickelodeon Consumer Privacy Litig*., 827 F.3d 262, 284 (3d Cir. 2016)).

Plaintiff alleges no facts that support the conclusion that the information allegedly transmitted by the TikTok pixel allows an ordinary person to identify any specific individual. Indeed, this is the *exactly* the information that the Third Circuit in *In re Nickelodeon Consumer Privacy Litig* found to be insufficient to allow an ordinary person to identify a particular individual as having watched specific videos, the holding of which was adopted by the Ninth Circuit. The Third Circuit held that (1) an IP address; (2) browser and operator system settings; and (3) a computing

device's "unique device identifier" did not constitute personally identifiable information as they are "static digital identifiers" which, to an average person, would be of little help in identifying an actual individual. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 at 283. The court further noted, "[a] great deal of copyright litigation, for example, involves illegal downloads of movies or music online. Such suits often begin with a complaint against a 'John Doe' defendant based on an Internet user's IP address. Only later, after the plaintiff has connected the IP address to an actual person by means of a subpoena directed to an Internet service provider, is the complaint amended to reflect the defendant's name." *Id.*

Plaintiff does not, and cannot, allege that an ordinary person would be able to identify any specific individual, much less plaintiff Gabriella Hernandez, from an IP address and her device make, model, operating system, and browser information. Accordingly, plaintiff's VPPA claim fails because she fails to plausibly allege that her personally identifiable information was disclosed.

## V. PLAINTIFF'S FAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

Dismissal of a complaint without leave to amend is appropriate where any amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Plaintiff has already amended her complaint once. It is readily apparent that plaintiff cannot cure any of the fatal defects in her pleading because she cannot, in good faith, allege that Ashley is a video tape service provider (as it is a furniture company); that she is a consumer who purchased videos from Ashley; or that Ashley disclosed any of her personally identifiable information that would enable an ordinary person to identify her. Accordingly, leave to amend should not be permitted and the FAC should be dismissed with prejudice.

## VI. CONCLUSION.

Based on the foregoing, Ashley respectfully requests the Court to dismiss the FAC with prejudice and without leave to amend.

Dated: August 4, 2023

**NORTON ROSE FULBRIGHT US LLP**
JEFFREY B. MARGULIES
EVA YANG


By _____
EVA YANG
Attorneys for Defendant
ASHLEY GLOBAL RETAIL, LLC

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT